Case 23-5229, Ilya Kovalchuk v. City of Decherd, TN, et al. Argument not to exceed 15 minutes per side. Counsel, you may proceed for the call when ready. Good morning, Your Honors. I'm Russell Leonard with the Twelfth Judicial District of Tennessee. I represent Plaintiff Ilya Kovalchuk in this lawsuit against the City of Decherd. The history of this thing is rather unusual. Mr. Kovalchuk was traveling on I-24 going through Murfreesboro, Rutherford County when he was forced basically to leave the road and pull off at an exit by Mr. Ward, who was a defendant in this case. We've got judgment against Mr. Ward. Mr. Ward was a police officer for the City of Decherd, Tennessee. We don't know exactly when he was hired. We don't know what transpired after his hiring. We do know that he pulled Mr. Kovalchuk, made him get off the road. Mr. Kovalchuk got out of his car. We also know he was off-duty, right? Correct. He was off-duty. And he's not in a police vehicle. He's in his personal vehicle? Correct. With a police-issued firearm from the City of Decherd. When asked about his being off-duty and outside of his jurisdiction, his response to Mr. Kovalchuk... Outside of his jurisdiction as well? Correct. Absolutely. He was outside of his jurisdiction. Rutherford County is not within Franklin County, Tennessee. I'm from Middle Tennessee, but give me a little bit of the geography here. So he was in... Tell me what you just told Judge Griffin again. Montego, Tennessee sits in the basically center of a hub. From Monego, you go to Chattanooga, or you go toward Nashville. Rutherford County is about halfway... I know where Rutherford County is. Is Decherd in Rutherford County? No. Decherd is just outside of the City of Winchester, Tennessee. Which is in... Franklin. Franklin County. Franklin County. Okay. I got it. Yes, ma'am. Sorry. I made it confusing. No, no. It's just... I mean, I know that part of the state. My father taught in Tullahoma for many years. Okay. Mr. Kovalchuk faced Mr. Ward's gun. Mr. Ward pulled his gun, pointed it at Mr. Kovalchuk's head, told him to get down on the ground. Mr. Kovalchuk tried to talk some sense into him. It didn't happen. Someone had called the police. They actually took films of it with their cameras. And the police arrived and he was arrested for aggravated assault. I don't know what happened to those charges. I do know that Mr. Ward has left the state of Tennessee and is now somewhere in Georgia. In any event, the United States District Court for the Eastern District of Tennessee granted a motion to dismiss in finding that, one, Mr. Kovalchuk's complaint lacked sufficient factual allegations to state a claim of municipal liability based on the City of Deckard's hiring practices. Number two, the complaint lacked any facts regarding what training Ward, the offending officer, had received, how it was inadequate, or why additional training was needed. And therefore, plaintiff could not show that Ward's training was constitutionally inadequate. And three, the complaint set out no factual allegations to support a failure to supervise theory. Well, as to the hiring practices, the complaint specifies that Chief Ross Peterson, the Chief of Police for the City of Deckard, following his improper discharge of a service weapon in his own home while intoxicated, without a termination of his job as Chief, or at minimum demotion or additional training to correct him, was allowed to, by the City had basically established acquiescence of improper practices and deliberate indifference. The bullet discharged from that man's gun could have gone through a wall and killed someone else, depending upon the trajectory. Was that a 1983 violation, the prior incident you're talking about? It's not a 1983 prior incident, it is just an improper incident involving the Chief of Police. This is a 1983 incident. That's correct. And I think you're trying to allege that had they done a proper background check, they would have found that it was likely or probable that he would commit this 1983 violation. If you're speaking of Ward, that is correct. Yes, but he had never committed another 1983 violation. He had discharged his firearm, I guess, in his home. He had been unprofessional. His demeanor was questioned and other things, but I don't see any history in his prior employment of 1983 violations, and I think that's what you have to show here. Your Honor, with all due regard, you are confusing the Chief of Police of the City of Deckard with Matthew Ward, who was the offending officer. What I'm saying is Ross Peterson had been guilty of firing the Chief of Police through a wall, and yet nothing happened. He was allowed to continue, and he was allowed to be the authority with regard to hiring. Oh, okay. He hired Matthew Ward. So this is even more remote. I thought Ward was the one that had fired the vehicle. Mr. Ward's background was never researched. The Chief of Police— Fellow, you're talking about—that was a single instance, and you're arguing the police department should have done something about training based on that instance. Your Honor, with all due respect, what I'm trying to say is there was no investigation of Mr. Ward's background by the Chief of Police. He instructed one of his officers, his investigator, not to look into Mr. Ward's background. Mr. Ward, they knew from what they did have that he had done something at the police department in Fort Walton because Fort Walton asked him to resign based upon, in quotes, his demeanor and his professionalism as well as his failure to obtain—to finish his training. So we don't know what his demeanor means. We don't know what his professionalism means. Did he do something that was unconstitutional there? Let me try to state your position as I understand it, and I'm going to try to state it in what I hope is a more artful way than the complaint does. You're alleging a policy on the part of the city of failing to investigate the background of officers appropriately and failing to take steps, proper disciplinary steps, when an incident occurred as with the Chief of Police shooting his weapon through a wall. And the reason it's a city—you allege it's a city policy is because the Chief of Police, who was one of the offenders, allegedly, and who allegedly is also the person who failed to investigate Mr. Ward and one other person, is the decision-maker, the policy-maker for the city with regard to how the police department conducts its investigatory and disciplinary proceedings. Correct. Do I understand that correctly? Absolutely. You are dead on. And the basis and the rationale behind— I think one of the problems—I'm not saying it's a fatal flaw, but one of the problems with the complaint is that I don't think it brings all that together in a way that is as clear as it might be about the allegations that would be required to hold the city responsible. And the problem with that, Your Honor, with all due respect, is the fact that because this investigatory background check was not done, we don't know what Mr. Ward did in Florida that got him dismissed. I don't think that's the problem. I think the problem is really how you state and frame the claim. I mean, I don't think it matters for this point that you don't— We know there was enough negative in the record to have put the department on notice had they chosen to look. Correct. The policy, you allege, is the failure to look, the failure to investigate. If Mr. Ward had done something unconstitutional previously or if he had a psychological makeup that made him unfit to be an officer, that would have been found out with a proper investigation. And as a result, we have a discovery issue. Well, I wonder if you could—I wonder if his personnel records from wherever he was before are public record and could have been obtained before the complaint was filed so there could have been a little more precision possibly. That is possible, Your Honor. But as you will note, at the time this was filed, it was filed the day of the one year because— I don't mean to suggest things you should have done as a lawyer. I mean, I'm not trying to second-guess you and say if only if you'd done X, you might have found Y. I mean, it was an observation, not intended to be a criticism. I understand, and I thank you for that. Mr. Leonard, I mean, my problem is that under Trombley, you have to allege facts that state a plausible claim. You have to have facts in your complaint that make it plausible that your claim is viable. And you can no longer just say, well, I don't know what the facts are. I will find out facts in discovery to support my claim. And I see that as your problem here. And you actually admit you don't know what prior conduct you could have discovered or might have been in Ward's background. So you're speculating that had they done a proper background check, they would have discovered that it was—the standard is highly likely that he would inflict the particular injury suffered by the plaintiff. And to me, you haven't submitted enough facts to show that it is highly likely that his background would have put the defendant on notice. Your Honor— This 1983 violation would have occurred. So can you address that? I read Trombley, and you are correct. That's what it says. And I realize that that is why, to some extent, this is deficient. The problem we have is, again, we didn't have this information available. What we did have is the fact that a Deckard officer used a Deckard weapon when he was off duty to claim he was on duty all the time and pulled this man over and put a gun to his head, totally unconstitutional, and he was employed by the city of Deckard at the time. So all I'm saying is this. Is it plausible that Mr. Ward's background, if it had been checked, would have shown that, in fact, he was not a proper officer to hire? We think yes. Not a proper officer, that it's highly likely that he would have engaged in this 1983 violative conduct. And we think discovery would show that, Your Honor, but we just have not. So you basically admit to me that your complaint doesn't have the facts in there that you really need? We don't and can't until we have discovery. Okay. I'm sorry. Well, I think it's subject to dismissal, then. That's all. Let me ask you this, Counsel. Counsel, Mr. Ward allegedly was dismissed from two prior employments with two different police departments. Do you have in your complaint mention of the fact that the department where these problems occurred did not check on his prior employment and consequently did not know of these two prior police departments who had trouble with this Mr. Ward and he either resigned or was let go from one of them and all that? Is that in your complaint? It is in the complaint that the investigator, Greg King, was told not to investigate. However, Mr. King apparently did a cursory investigation and that's how we knew that in fact Mr. Ward had been asked to resign because of his demeanor and professionalism and the fact that he hadn't finished his training. That was in the records of the City of Deckard Police Department. So even though the chief may have said don't do a complete investigation, enough was done to know that. Is that right? That is correct. And what about the other, there was another individual, another officer who you knew some, had some information about? That was an officer by the name of Delacruz at the time that he hired on with the City of Deckard. He had been fired from the department, I think it was in Fayetteville, Tennessee, for some apparently some bad, we don't know, it didn't get into the records that Mr. King had access to. But in any event, he went by another Hispanic name and he legally changed his name, got hired by the City of Deckard with no background check whatsoever. So it sort of set the stage for... So it's a problem I think, if there is a problem, is whether what you do have alleged in the complaint can amount to a policy on the part of the city. And we think that it does in that there's at least two officers that were hired without enough of a background check to even know who they were. Delacruz had previously been, I think it was Ortega or Ortiz, it's in the complaint, but he went by another name, changed the name, got hired. All this in the complaint? I'm sorry? All that in the complaint? Yes, ma'am. Is it in your complaint how the chief of police is chosen in the City of Deckard? I'm sorry, say it again. How is the chief of police chosen in the City of Deckard? It is not in our complaint. He was hired. We don't know how or why. I mean, does the mayor appoint him? Does the... I think he is hired by the city board. That ought to be readily available. The board, like a city council or... He's no longer employed. Well, I know, but how does he... I want to... What I'm trying to figure out, the reason I'm asking you these questions is because, you know, if you're going to hold the city liable, you want to make sure that the city is the party who's responsible for putting him in the place he's in. Correct. And the city is the only entity that would have the ability to hire the chief of police for the City of Deckard. The board. Is that the board of aldermen or the... I believe it's the board of aldermen, mayor and board of aldermen. I think the mayor has a veto vote, but that's essentially all it is. And how that's done would be a matter of public record. I mean, you could easily have... That is true. That is true. Again, at the time that this was filed on the day, because of when and how it came to me, that was not able to be done prior to filing the complaint. And unfortunately, maybe should have been done thereafter and maybe possibly an amended complaint filed. I have to admit that that was always a possibility, if an answer hadn't already been filed. But nonetheless, that didn't happen. But we feel this is one of those cases, whether it was a case cited by the defendant, that indicated that sometimes if there's a plausible claim for relief, then it also merits going to discovery stage in order to ferret out what has not been available. Otherwise, I mean... The problem with that, I mean, what you say is correct. It's a matter of, you know, we all would like to see situations developed through proof so that, you know, you can make a better assessment. But the pleading rules in this context are relatively strict with respect to city liability here. And I certainly understand that, and I understand why. Responding out superior to the city of Deckard is not something that the law would envision. And I understand that. However, it was the city and the city's policies that prevented the necessary information from being there from the start. The meat was not on the bone because the city didn't allow the meat to be on the bone. That's my way of thinking of it, and it may be absolutely abstract. But if it hadn't been for their failure to gather the necessary information... We don't know, for instance, whether once he was hired, they made him have the training that he did not receive from Fort Walton. There's nothing in the record of the city. At this point, there's not really a record in the sense of an evidentiary record, but you're responsible for what's before the court. Nobody else is. That is correct, Your Honor. That is correct. I did with what I had. Isn't that fatal to your failure to train claim if you don't know what training he received? I mean, how can you allege plausibly that they're liable for failing to train when you don't know what training he had? We don't know what training he had because we don't know when he was hired, and we don't know what training he missed in Fort Walton. I have to admit, I think the training theory is gone. But I think that the hiring... How about the failure to supervise claim? Is that gone, too? I think that's gone. I truly do. So you're left with the failure to hiring is what you're claiming. Correct. Hiring policy that... Correct. A failure to investigate. Absolutely. That is all I have left by my own admission. That helps. Thank you. Good morning, Your Honors. My name is Michael Schmidt of the Nashville Bar. I'm here on behalf of the City of Deckard. It appears I'm going to focus my argument today on the failure to hire the claim based upon the admission of counsel before me. I wanted to briefly touch, before I discuss some of the legal arguments, some of the questions that the bench had directed to counsel before me. One of those questions related to the previous chief who had instructed his investigator to forego any sort of investigation or background check onto Mr. Ward, which that is in the complaint. I believe maybe, Judge Gibbons, you asked the question whether or not the counsel had stated there was a cursory review of the record where he found out that there was some red flags and whether or not that was alleged in the complaint. And the specific paragraph in the complaint that discusses that is paragraph 22. And the last sentence suggests otherwise. And it states, a reasonable investigation into the background of defendant Matthew Ward would have revealed these red flags and prevented this incident. And so, I don't know if the complaint is clear as to whether or not those... That sounds pretty clear. It sounds like he's saying that if the applicant had been investigated, he would not have been hired. And if he wasn't hired, this incident would not have transpired. That sounds like what he's saying there. I think that is his argument. I'm not sure if that paragraph is... Well, I would say that that's what that paragraph says. But that's not necessarily the standard for determining whether or not there is a deliberate indifferent hiring practice. Well, he has to show that this hiring was emblematic of a policy or practice with respect to hiring. So, if he can get past that hurdle, he maybe has pled enough to keep his complaint going forward, don't you think? I would agree that that is a possibility. You know, the easy hiring practice or question would be if an individual, an applicant has a history of wrongful arrests and we hire that individual anyway and he goes out and he does a wrongful arrest. That's the kind of easy A to B. Yeah, but I mean, we do know that he was asked to leave by two previous police departments. And we do know that if the allegations of the complaint are taken as true, he certainly did not behave appropriately in this situation. So, I mean, we know that much. I would agree. We don't know whether it ultimately would be proven, but we know it's alleged. Correct. And so, the question therefore is, well, one, did we know of this past history and therefore could we be deliberately indifferent to it? And I think that the trial court, the district court, made mention in its memorandum that the city's cursory hiring practices could be, I forget if I said negligent, but it doesn't rise to the standard of separate indifference. It's not so much whether they knew, but whether they would have known had they investigated and was the failure to investigate in connection with his hiring or his application, did that occur because it was the city's policy or practice not to investigate applicants? That's really what I think the plaintiff is trying to argue here. Isn't that the correct formulation of the issue? If I understand how the court is viewing this issue, it's while not doing an investigation in and of itself is not unlawful or is not a constitutional violation, if you have a history or a policy of doing a cursory or not doing any investigations at all, that could lead to a constitutional violation. But I think without more, without a history showing that our allegedly improper hiring practices were leading to... Causation is the problem here. Causation, so if... Causation is the issue here that did the improper hiring practices cause or likely cause, likely cause is the standard, the 1983 violation. And I think that's what's missing here is the causation element. Am I right? I agree, Your Honor, yes. Okay, I mean, to me it's quite obvious. There's no causation between negligent hiring, failing to find out his lack of professionalism, lack of demeanor, and that the failure of the hiring practice is causing this 1983 violation? I agree. In the Supreme Court case, Board of Commissioners v. Brown actually speaks directly to that. I think I quoted from it. Exactly. And in that case, the chief of police that got sued for improper... Or the municipality was being sued for the hiring practices, the chief did a cursory review of an applicant's history and that applicant's history showed driving infractions, he pled guilty to various driving-related offenses and misdemeanors, including assault and battery, resisting arrest, and public drunkenness. And that case involved one of excessive force. And the Supreme Court, the trial court level, found that it was sufficient to establish Monell liability. The circuit level found it had. And the Supreme Court said that that was not sufficient, that the hiring practice in and of itself was a legal hiring practice and that background was insufficient to hook the municipality under Monell. And in this case, we have much more ambiguous phrases such as his demeanor or that there was red flags in his record. And I think that that falls short of the plausibility standard that's required to get past the pleading stage and to get into the discovery stage. And so, you know, the fact that in 2011 the chief of police allegedly got drunk and shot his firearm off in the apartment complex, you know, that's not, that does not speak to causation. That's too tenuous. I don't think we can gather much from the incident of the chief's shooting off his firearm trying to connect that to this situation. But the argument here is that this deficient hire would not have occurred had the policy, the hiring policy prevented his being hired. I mean, the argument is this, a man with this background is likely to commit constitutional violations. And obviously, if he had not been hired pursuant to the hiring policy, the constitutional violation could not have transpired. Is that a possible argument in favor of Monell liability or not? I think that's kind of an example of a warning that the Supreme Court and this court has warned litigants about where the failure to train, failure to hire, having that collapse into a respondent's superior liability where just because we employed a wrongdoer. Because obviously, if we would not have hired a wrongdoer, then we would cut them off. Well, not just that you hired a wrongdoer, but that the wrongdoer was hired because of deficient hiring practices. Failure of hiring policy, of proper hiring policies that arguably resulted in this incident. And, you know, I think it's hard. I mean, you know, Judge Griffin is talking about causation. Well, for the most part, I mean, causation ultimately is pretty much always a matter of the proof. It's not a pleading issue. But you do have to plead it properly. And, I mean, you're not the one who drafted. You're obviously on the other side of this dispute. But my problem with this case is that, you know, you've got a pretty egregious incident involving a police officer, allegedly, you know, assuming that that's true. Then you have all these hoops to jump through in terms of whether municipal liability has been sufficiently pled. And it's pretty unsatisfying. And I think you're ever serious aware of this. It's pretty unsatisfying to not have clear allegations about exactly what the city's policies were, exactly what it was the city could have found out. I mean, the whole, the incidents that is alleged is horrible. But it's a difficult case as far as municipal liability because of the precedent we have to follow. And because I'm not sure the complaint, it's like there are bits and pieces here and there that make you think that possibly it's a situation in which, or me, make me think that it is a possible situation in which municipal liability could be appropriate. And yet we got a pleadings issue that I'm not sure whether we can overcome in order to get to the heart of what really happened and whether the city could be culpable under the applicable law. I mean, I would agree. I mean, it's possible. But it doesn't get to the plausibility level, right? And that's kind of the tricky part where the hiring of Mr. Ward in and of himself was not an unconstitutional practice because, as counsel admitted, we don't know. And so we're left to guess. The principle, the policy has to be a failure to appropriately investigate and screen prospective officers. Correct. And I would suggest that there has to be some history of violations. And so let's suggest that we just never investigated anybody we hired and we just saw that our officers were continually violating people's constitutional rights. At that point in time, we would be on notice that our hiring practices were not only deficient but possibly constitutionally deficient and we would be required to alter our hiring practices, possibly alter our training practices, things of that nature. And I don't think this is one of those situations where it's so obvious that you have to conduct a background check on an officer. Otherwise, you are going to be violating the Constitution and your hiring practices that you do need some sort of notice to suggest that our hiring practices are improper. The problem I see with this, his argument, is it really establishes respondeats' superior liability for any deficient hiring practice. If a municipality has any kind of a deficient hiring practice, then they're liable for whatever the officer does. And that's basically his argument. So say they didn't adequately look into his driving record and he has speeding tickets. So it's likely that this officer is going to speed, whatever it is. But say he murders somebody. Say he just murders somebody, the argument would be they're liable for the murder because they didn't check out his history of speeding. And to me, that's respondeat superior. I think it's a violation of the Brown Supreme Court's decision. But that's really what they're arguing, isn't it? I would agree, Your Honor. Okay. If there's no more questions, thank you. Thank you. Madam Rapato? It's touching on Brown again, Your Honors. In Brown, the court opined that, in quotes, a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right, can the official's failure to adequately scrutinize the applicant's background constitute, in quotes, deliberate indifference. There was no adequate scrutiny in this instance whatsoever. Plainly obvious consequence that this 1983 violation of off-duty pulling on somebody over and brandishing your weapon is plainly an obvious consequence of the failing to look at his background. That's what you have to show, plausibly. Chief Peterson's deliberate indifference in not looking. That's correct. Okay. That it's plainly obvious that this would have occurred, that they should have known it. Okay. Absolutely. Okay. Thank you. Thank you very much. And the case shall be submitted.